IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. RUDY VIGIL, | No. 8:07:CV266 |
| Plaintiffs, | |
| v. | |
| NELNET INC., JPMORGAN CHASE & CO., and CITIGROUP INC. | |
| Defendants. | |

**DEFENDANT JPMORGAN CHASE & CO.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Prepared and submitted by:
Edward G. Warin, 14396
Thomas J. Kenny #20022
Paul R. Gwilt #22660
Kutak Rock LLP
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000

ATTORNEYS FOR DEFENDANT JPMORGAN CHASE & CO.

## I. INTRODUCTION[1]

A relator seeking recovery under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA") must set forth with specificity all essential elements of an FCA claim. To survive dismissal, a complaint must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). A conspiracy claim under the FCA must meet those pleading requirements, and must also allege an unlawful agreement and overt acts in furtherance of same. As in all federal actions, the relator must show the "plausibility of entitlement to relief," not merely "unwarranted inferences and sweeping legal conclusions cast in the form of factual allegation[s]."

In this case, Relator Rudy Vigil—a former employee of Nelnet—has filed three versions of a complaint, but the true plaintiff, the United States, has declined to intervene. Yet after two years, the Third Amended Complaint ("Complaint") here still falls far short of the minimum allegations necessary to state an FCA claim against Chase. Relator fails to describe even one allegedly false claim and fails to properly allege that a single claim was submitted by or on behalf of Chase or that any claim was false, much less knowingly false. Relator has alleged no conduct by Chase at all, other than participation in entirely lawful agreements and lending practices.[2] Relator has alleged none of the specific facts the Eighth Circuit requires in FCA actions.

Relator's conspiracy claim, which requires even more specificity under the FCA, is also fatally defective. Aside from speculative comments on Chase services contracts with Nelnet, which Relator admits he has not seen, nefarious purposes alleged "on information and belief"

---

[1] The following definitions are used herein: "Relator" refers to Relator Rudy Vigil; "US" refers to United States of America; "Nelnet" refers to Defendant Nelnet Inc.; "Chase" refers to Defendant JPMorgan Chase & Co.; "Citigroup" refers to Defendant Citigroup, Inc. and "TAC" or "Complaint" refers to the Third Amended Complaint (Filing No. 25).

[2] As described below, at Section D, Relator admits that JPMorgan Chase Bank, N.A. (not Chase) was the lender with contracts with Nelnet, and the Complaint fails to properly allege that Chase was an alter ego of JPMorgan Chase Bank, N.A.

and unspecified Nelnet audits "ostensibly" reviewed by Chase, the Complaint pleads no facts supporting a conspiracy claim against Chase. Moreover, the Complaint impermissibly asserts Chase conspired with its own agent, and fails to allege any *unlawful* conspiratorial agreement. The Complaint fails to state a claim for conspiracy.

The Complaint suffers from further fatal defects. It fails not only to assert any claim for primary liability under the FCA, but also fails to properly allege any theory of vicarious or secondary liability against Chase. Finally, the Complaint is not directed against the proper Chase entity.

For all these reasons, the Complaint should be dismissed, with prejudice.

## II. PROCEDURAL HISTORY

On July 11, 2007, Relator Rudy Vigil filed this action under seal against Nelnet. (Filing No. 1). On July 13, 2007, the Court granted Relator's request to withhold issue of summons (Filing No. 10). The United States subsequently filed several *ex parte* applications to extend the time to consider whether to intervene, during which time the Complaint and the subsequent Amended Complaints remained under seal (Filing Nos. 18, 22, 28, 31 and 34).

Relator filed a First Amended Complaint on August 15, 2007 (Filing No. 17) and a Second Amended Complaint on November 7, 2007 (Filing No. 21). On May 19, 2008, a Third Amended Complaint was filed, adding Defendants Chase and Citigroup (Filing No. 25). The unsealed portions of the Court file do not reveal the basis for or content of the amendments to the Complaint. On March 13, 2009, the Court ordered that the seal be partially lifted to permit the United States to disclose the existence of this case and Relator's most recent Amended Complaint to the Defendants, at the United States' discretion (Filing No. 33).

On October 13, 2009, the United States informed the Court that it would not intervene in the suit (Filing No. 47). Accordingly, on October 14, 2009, the Third Amended Complaint was unsealed, with all documents filed prior to October 13, 2009 remaining sealed. (Filing No. 48). Chase was served on November 4, 2009. On November 20, 2009, the Clerk of the District Court granted Chase's motion for an extension of time and ordered Chase to file its initial responsive pleading on or before December 24, 2009 (Filing No. 54). Chase subsequently received a further extension to January 7, 2010. (Filing No. 76)

### III.  STATEMENT OF FACTS

Relator worked for Nelnet from 2003 through 2004 to market consolidation loans to student loan borrowers (TAC, ¶ 8). Relator alleges that, in connection with certain student loans, Nelnet violated the anti-inducement and the fraudulent and misleading advertising provisions of the federal Higher Education Act ("HEA"), federal regulations and Department of Education ("DOEd") policies (TAC, ¶ 2). As a result of Nelnet's allegedly unlawful practices, Relator contends that each and every Federal Family Education Loan Program ("FELP") loan-related claim or request for reimbursement submitted by Nelnet during this time period violated the FCA. Relator alleges millions of dollars in losses (TAC, ¶ 67) and seeks to recover three times that amount as well as civil penalties for each allegedly false claim (TAC, Prayer for Relief). Though the Complaint identifies no specific conduct by Chase, it asserts Chase should bear legal responsibility for Nelnet's actions under general theories of conspiracy, agency and aiding and abetting. (TAC, ¶ 19). However, Relator fails to allege that any of the alleged wrongful conduct by Nelnet had any nexus to any loans for which Chase was the lender.

Relator specifies four types of certifications made by Nelnet either to DOEd or to unidentified "guarantee agencies" that allegedly were false: claims for interest and special

allowance payments, claims for loan default payments, lender/servicer participation agreements, and federal direct consolidation loan verification certifications. (*See* TAC, Exs. H, I, K and M).[3] Relator identifies no specific information regarding Nelnet's alleged submission of any of these forms, such as who signed the forms; how many forms were submitted; when the forms were allegedly submitted; how much money Nelnet requested; how any form was false; or any factual basis to suggest any claim was "knowingly" false. Relator does not allege he ever reviewed any claim form. Relator does not allege Chase knew of or participated in the filing of any claim.

Relator alleges that since "Vigil started working for Nelnet, until present, Nelnet entered into and performed under contracts wherein Nelnet would perform servicing duties for various lenders, including, but not limited to, presenting to the DOEd . . . claims for special allowance payments, interest subsidies and default claims on the loans these lenders hold and Nelnet services" (TAC, ¶ 19). While Relator claims Nelnet enters such contracts with "various lenders," he admits that he has not reviewed any such contract with Chase. "Relator does not have a copy of these agreement[s]." (TAC, ¶ 19).

Relator alleges "upon information and belief" that Chase and other lenders "typically use companies such as Nelnet as a conduit to make claims on FFELP loans in order to (a) conceal the fact that they were the entity making the claims and (b) to take advantage of the company's [Exceptional Performer] designation" (TAC, ¶ 19). Relator fails to note that each form appended to the Complaint requires the name and identification number of both the lender (Chase) and the servicer (Nelnet), thus demonstrating that Relator's allegations of "concealment" are simply not plausible. (TAC, Exs. H and I).

---

[3] The Complaint fails to allege even theoretically wrongful conduct by or knowledge of Chase with regard to Exhibits K and M.

Relator attempts to link Chase to the allegedly unlawful practices of Nelnet by asserting Chase "knowingly assisted in the improper acts, plans, schemes and transactions that are the subject of this Complaint" and that Chase was a "member of a conspiracy . . . to obtain the maximum amount of U.S. money, with overt wrongful acts in the presentment of false claims by Nelnet to achieve this purpose" (TAC, ¶ 7). Nowhere in the Complaint, however, does Relator allege Chase possessed any knowledge of Nelnet's allegedly wrongful activities. Instead, Relator simply alleges in conclusory terms that "[Chase] . . . knew, should have known, and continues to know that Nelnet's servicing and marketing activities were in violation of HEA statutes, regulation and DOEd policies" (TAC, ¶ 19).

Relator's sole factual assertion concerning Chase's purported knowledge of the "improper acts, plans, schemes and transactions that are the subject of this Complaint" is the following speculation:

> Nelnet was subject to yearly independent audits of its administration of [Chase's] . . . loan portfolios … [and Chase] . . . either reviewed these audits before contracting with Nelnet, thus knowing Nelnet serviced and marketed its loans out of HEA compliance, [was] deliberately ignorant . . . or recklessly disregarded Nelnet's regulatory non-compliance.

(TAC, ¶ 20). Relator does not allege that any of these "audits" revealed even a single instance of "regulatory non-compliance."

As discussed more fully below, Relator fails to state a claim against Chase by failing to allege the purported fraud with the specificity required by the Federal Rules of Civil Procedure, alleges no specific facts relating to the purported fraud (i.e., the who, what, where, when and how of the claimed fraud) and fails to properly allege Chase knew any claim submitted by Nelnet was false. Relator also fails to state a claim for conspiracy and does not properly allege any other legal basis for any claim against Chase. Relator's Complaint against Chase falls woefully

short of the standard required under Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure and thus should be dismissed with prejudice.[4]

## IV.  STANDARD OF REVIEW

**A.     Rule 12(b)(6) Standard.**

A complaint must be dismissed where, as here, it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The Supreme Court has recently articulated a new and more exacting standard for evaluating the sufficiency of a complaint:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). The "[t]wo working principles" underlying this standard are:  (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Id.* at 1949-50 (quoting Fed. R. Civ. P. 8(a)(2)).

Although the Court must accept the material factual averments in the Complaint as true, it is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and

---

[4] Relator has now filed three amendments to a Complaint which still fails to state a claim and in which the United States has declined to join.  Accordingly, the Complaint should be dismissed, with prejudice.

sweeping legal conclusions cast in the form of 'factual allegations.'" *Farm Credit Servs. of Am. v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003).

**B.      Rule 9(b) Standard.**

Complaints alleging violations of the FCA must comply with Rule 9(b) and must, "to satisfy the particularity requirement of Rule 9(b)," plead "such facts as the time, place and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex. rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *see also United States ex rel. Kinney v. Stoltz*, 327 F.3d 671, 674 (8th Cir. 2003) (FCA claims must comply with Rule 9(b)).

Rule 9(b)'s threshold requirement demands that an FCA complaint identify the actual false claims submitted to the government. A *qui tam* plaintiff cannot simply allege a general theme, but must identify with particularity the false claims that were actually submitted. *See Joshi*, 441 F.3d at 557 (affirming dismissal under Rule 9(b) because relator failed to allege the details of the fraudulent claims allegedly submitted to the government); *United States ex rel. Woods v. North Arkansas Reg'l. Med. Ctr.*, No. 03-3086, 2006 WL 258662, at *3-4 (W.D. Ark. Sept. 7, 2006) (same); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (affirming dismissal of a *qui tam* complaint that described an elaborate scheme for submitting false claims to the government, but which failed to show that the defendants "actually submitted reimbursement claims for the services he describe[d]"); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (dismissing complaint under Rule 9(b) because the complaint failed to allege the "'who,' 'what,' 'where,' 'when' and 'how' of fraudulent submissions to the government").

## V.  ARGUMENT

**A.  Relator's Complaint Fails To State a Claim Under the False Claims Act.**

In order to set forth a *prima facie* case under the FCA,[5] Relator must allege three necessary elements: "(1) [Chase] made a claim against the United States; (2) the claim was false or fraudulent; and (3) [Chase] knew the claim was false or fraudulent." *United States ex rel. Golden v. Arkansas Game & Fish Comm'n*, 333 F.3d 867, 870 (8th Cir. 2003).  Each of those elements must be pled with particularity pursuant to Rule 9(b).  Because Relator has failed to properly allege even one of these elements, all Counts of the Complaint asserted against Chase must therefore be dismissed with prejudice.

### 1.  *Relator Fails To Allege That Chase Submitted Any Claim to the United States.*

To state a claim for relief under the FCA, Relator must identify with specificity facts regarding claims knowingly submitted to the government by Chase.  Aside from general references to publicly-available government forms submitted by all student loan lenders or servicers, Relator alleges no facts about even a single claim submitted by Chase.  Accordingly, the Complaint should be dismissed.

Liability under the FCA is, by definition, predicated on the submission of a false claim; there can be no liability under *any* provision of the FCA absent a knowing submission of a false claim.  *See Costner v. URS Consultants, Inc.*, 153 F.3d 667, 677 (8th Cir. 1998) ("The FCA 'attaches liability, not to the underlying fraudulent activity, but to the 'claim for payment.'") (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996)); *United States v. Kitsap Physicians Services*, 314 F.3d 995, 1002 (9th Cir. 2002) ("The

---

[5] For ease of reference, Chase will use the FCA code citations in effect when Relator filed his Third Amended Complaint.

[FCA] . . . focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme . . . . In short, it is the claim itself that is central to [an FCA] action."); *United States ex rel. Bailey v. Ector County Hosp.*, 386 F. Supp. 2d 759, 763 (W.D. Tex. 2004) (absent the submission of a false claim, "actions do not constitute a cognizable false claims cause of action even if they involve 'false' statements or unlawful conduct") (citing *Costner*, 153 F.3d at 677.)

"Requiring relators to plead FCA claims with particularity is especially important in light of the quasi-criminal nature of FCA violations . . . Rule 9(b) ensures that the relator's strong financial incentive to bring an FCA claim – the possibility of recovering between fifteen and thirty percent of a treble damages award – does not precipitate the filing of frivolous suits." *Atkins*, 470 F.3d at 1360. As explained by the First Circuit, "notice is not the only reason for the requirement of Rule 9(b). It is a serious matter to accuse a person or company of committing fraud, and the mere accusation often causes harm." *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) *overruled on other grounds by Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123, 2130-31 (2008).

The Eighth Circuit's recent decision in *Joshi* compels dismissal of Relator's claims against Chase in this action. In *Joshi*, the relator, Dr. Joshi, alleged that a hospital had submitted false claims for Medicare and Medicaid reimbursement for a physician's anesthesia services and that the physician had conspired with the hospital in a scheme to defraud the government. *Joshi*, 441 F.3d at 554. The Eighth Circuit Court of Appeals dismissed the allegations pursuant to Rule 9(b) because, as here, the relator failed to allege the details of any false claim with particularity:

> Absent from the complaint are any mention of . . . *who was involved* in the fraudulent billing aspect of the conspiracy, . . . *what services* were provided and to which patients the services were provided, . . . *what the content* was of the fraudulent claims, . . . *what dates* the defendants allegedly submitted the false claims to the government, . . . *what monies* were fraudulently obtained as a result of any transaction, or . . . how [relator] Joshi, an anesthesiologist, learned of the alleged fraudulent claims and their submission for payment.

*Joshi*, 441 F.3d at 556 (emphasis added). *See also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (where "Plaintiffs provide the barest clue as to when the alleged fraud took place, and the Defendants are left to guess [who was] responsible for th[e] alleged fraud," FCA claim fails to meet the requirements of Rule 9(b)).

In *Woods*, the court followed the ruling in *Joshi* and held that the relator failed to meet the requirements of Rule 9(b) because she "does not identify the dates defendants actually submitted the alleged false claims to the government, who was involved in submitting the fraudulent claims, what the content was of the fraudulent claims, or what monies were fraudulently obtained." *Woods*, 2006 WL 2583662, at *3.

Federal courts apply Rule 9(b)'s directives to require *qui tam* relators to identify with particularity the alleged false claim that would give rise to a violation of the FCA. As held in *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1011 (11th Cir. 2005), a decision cited favorably by the Eighth Circuit in *Joshi*:[6]

> [Relator] argues that a pattern of improper practices of the defendants leads to the inference that fraudulent claims were submitted to the government, but we disagree. *Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances.* . . . Although we construe all facts in favor of the plaintiff when reviewing a motion to dismiss, *we decline to make inferences about the submission of fraudulent claims because such an assumption would "strip [ ] all meaning from Rule 9(b)'s requirements of specificity."* . . . . In short, [relator] provided the "who," "what," "where,"

---

[6] 441 F.3d at 557.

"when," and "how," of improper practices, but he failed to allege the "who," "what," "where," "when," and "how" of fraudulent submission to the government.

*Corsello*, 428 F.3d at 1013-14 (emphasis added).

Similarly, the Eleventh Circuit affirmed the dismissal of a *qui tam* action in a motion to dismiss because even though the relator "described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims" identifying "particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement," he " *fail[ed] to provide the next link in the FCA liability chain: showing that the defendants actually submitted reimbursement claims for the services he describes*." *Atkins*, 470 F.3d at 1359 (emphasis supplied).

The *Atkins* court recognized that "[a]lthough the relator stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint failed to meet the minimum pleading requirements for the actual presentment of false claims." *Id*. at 1358 (internal quotations and citations omitted). "No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described and not one copy of a single bill or payment was provided." *Id*. "Rule 9(b) . . . does not permit a [FCA] plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the Government." *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002).

Numerous courts of appeal have adopted the following list of particular allegations necessary to comply with Rule 9(b):

> In a case such as this, [1] details concerning the dates of the claims, [2] the content of the forms or the bills submitted, [3] their identification numbers, [4] the amount of money charged to the government, [5] the particular goods and services for which the government was billed, [6] the individuals involved in the billing, and [7] the length of the time between the alleged fraudulent practices and the submission of claims based on those practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied for each allegation included in a complaint. However . . . we believe that "some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727-28 (10th Cir. 2006); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004); *Clausen*, 290 F.3d at 1312, n.21.

In stark contrast to the pleading requirements necessary to state a FCA claim, the Relator here fails to allege Chase submitted a single claim to the government. Instead, Relator identifies form documents which he simply *assumes*, but does not specifically allege, must have been submitted to the government sometime, by someone. Relator does not specifically allege that Chase submitted any claims, nor does he identify a single claim submitted by anyone on Chase's behalf. Rather, he attaches publicly-available, blank form documents not signed by anyone and speculates that someone connected to Chase must have been involved in submitting something false. Relator provides no specific information regarding even one of the alleged submissions. *See United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting *Joshi*, 441 F.3d at 556) ("FCA complaint 'must provide some representative examples of [the] alleged fraudulent conduct").

Relator does not provide any "details concerning the dates of the claims." Relator never identifies *where* or *when* any of the conduct alleged in the Complaint took place. Instead, Chase is left to guess as to some unidentified time in 2003 through some other unidentified end point

during which the conduct alleged in the Complaint occurred. This is clearly insufficient. *See Corsello*, 428 F.3d at 1013 (allegation that "improper practices took place 'everywhere [defendant] does business throughout the statutory time period'" is insufficient); *United States ex rel. v. JFK Medical Center*, No. 01-8158 2002 WL 31941007, at *3 (S.D. Fla. Nov. 15, 2002) (alleging six-year time span is not sufficient).

Relator identifies the general categories of forms purportedly submitted by lenders to the government, but fails to describe a single claim actually submitted nor any requisite facts regarding:

- "the content of the forms or the bills submitted",
- "the amount of money charged to the government",
- "the particular goods or services for which the government was billed",
- "the individuals involved in the billing", and
- "the length of the time between the alleged fraudulent practices and the submission of claims based on those practices."

*See, Sikkenga*, *supra*, 472 F.3d at 727.

Similar tactics were soundly rejected by the district court and the Eleventh Circuit in *Clausen*. In *Clausen*, the relator alleged that the defendant ordered numerous unnecessary tests and allegedly submitted false CMS Form 1500s. *Id*. 290 F.3d at 1306. The relator provided a blank Form 1500 and described to the court how the tests identified on patient lists would have been coded on the Form 1500. *Id*. Nonetheless the district court dismissed the case for failure to comply with Rule 9(b) and the Eleventh Circuit affirmed, finding that:

> [N]o copies of a single actual bill or claim or payment were provided. No amounts of any charges by [Defendant] were identified. No actual dates of claims were alleged. Not a single completed Form 1500 was provided. No policies about billing or even second-hand information about billing practices were described, other than to state that electronic Form 1500s with certain medical test codes were used. . . . In none of [the relator's] description of the alleged schemes by [defendant] to increase its testing and testing revenues . . . does he provide any

14

> factual basis for his conclusory statement tacked on to each allegation that bills were submitted to the Government as a result of these schemes . . . . [N]owhere . . . can one find any allegation, stated with particularity, of a false claim actually being submitted to the Government.

*Id*. at 1307, 1312. *See also*, *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) ("These conclusory allegations shed no light on the nature or content of the individual forms or why any particular false statement would have caused the government to keep the funding spigot open, much less when any payments occurred or how much money was involved.").

Rule 9(b) compels dismissal of a complaint which simply alleges that claims "must have been submitted, were likely submitted or should have been submitted to the Government." *Clausen*, 290 F.3d at 1311. Relator's failure to allege any specific facts identifying a single claim which was allegedly submitted to the government compels dismissal of all claims against Chase.[7]

---

[7] Relator's allegations relating to "claims" made to guarantee agencies (TAC, ¶ 17), should be dismissed for another reason: failure to allege "presentment" under Section 3729(a)(1). "Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act." *Clausen*, 290 F.3d at 1311 (emphasis supplied). The "central question" in such a claim "is whether the defendant ever presented [or caused to be presented] a 'false or fraudulent claim' to the government." *Clausen*, 290 F.3d at 1311 (quotation and citation omitted). As asserted by Relator, "[p]ayments to FFELP lenders for default claims are presented by the FFELP lender, or servicer acting on the lenders' behalf, directly *to a [guaranty agency]* through the submission of a Claim Form" (TAC, ¶ 17) (emphasis added). A guaranty agency is defined as "any State or nonprofit private institution or organization with which the Secretary has an agreement under [20 U.S.C. § 1078(b)]." 20 U.S.C. § 1085(j). A guaranty agency is not "an officer or employee of the United States Government," and accordingly any claim "presented" to a guaranty agency does not meet the presentment requirement of Section 3729(a)(1). *See United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004) (finding allegedly false claim submitted to Amtrak was not "presented" to an officer or employee of the United States Government."). *See also, United States v. Hawley*, 566 F.Supp.2d 918, 930 (N.D. Iowa 2008 subsequent determination) (finding that alleged false claims submitted to private crop insurer which were then submitted to federal government for reimbursement were not "presented" to the government for purposes of 31 U.S.C. § 3729(a)(1)).

**2.     *Relator Has Failed To Allege That Chase Knew Any Claim Was False or Fraudulent.***

The Complaint should also be dismissed because Relator failed to allege another essential element of a FCA claim: that Chase *knowingly* submitted a false claim. Because the Complaint fails to allege this essential element of a FCA claim, the Complaint should be dismissed for this reason as well.

The FCA defines "knowingly" as meaning that a person, with respect to information:

(i)     has actual knowledge of the information;
(ii)    acts in deliberate ignorance of the truth or falsity of the information; or
(iii)   acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b)(1)(A). "[I]nnocent mistakes and negligence are not offenses under the Act." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464-65 (9th Cir. 1999) (internal quotations and citations omitted); *see also Hindo v. University of Health Sciences/The Chicago Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995) ("The requisite intent is the knowing presentation of what is known to be false. In short, the claim must be a lie.") (internal quotation and citations omitted); *see also United States ex. rel. Roby v. Boeing Co.*, 100 F. Supp. 2d 619, 626 (S.D. Ohio 2000) *aff'd*, 302 F.3d 637 (6th Cir. 2002). ("[S]tatements of claims which are false within the meaning of the FCA must be more than objectively untrue, they must betray or suggest intentional deceit."); *Minnesota Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1053 (8th Cir. 2002) ("[I]t is important to remember that the standard for liability [under the FCA] is knowing, not negligent, presentation of a false claim."). Relator falls far short of meeting this standard.

In *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 454 (5th Cir. 2005) the Fifth Circuit upheld a dismissal of a FCA claim because "[Relator's] complaint fails to plead any particular facts showing that Bell Helicopter was aware of the actions of its

employees, that it had intentionally filed these false claims with the government, that it had purposefully withheld information about these charges, or that it had intentionally failed to repay the government for the overcharges." *See also Sealed Appellant I v. Sealed Appellee I*, 156 Fed. App'x. 630, 633 (5th Cir. 2005) (granting motion to dismiss because "Appellant has failed to plead any particular facts showing that Appellee was aware of the actions of its employees and intentionally filed false claims with the government. . . . The complaint includes no more than the conclusory assertions of Appellee's knowledge and intent to file fraudulent claims.").

As the Second Circuit recently concluded: "[A]lthough Rule 9(b) permits knowledge to be averred generally, we have repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent. Essentially, while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. An ample factual basis must be supplied to support the charges." *Wood ex rel. United States v. Applied Research Associates, Inc.*, No. 08-CV-3799, 2009 WL 2143829, at *2 (2d Cir. July 16, 2009) *petition for cert. filed*, 78 U.S.L.W. 3295 (U.S. Oct. 14, 2009) (No. 09-54); *see also Hypoguard*, 559 F.3d at 822 n.3 (quoting *Allison Engine*, 128 S. Ct. at 2126) (plaintiff must show "that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim"). "Even under the general notice pleading standard, however, Relators cannot simply generically recite the elements of their claim-*i.e.*, that Defendant . . . 'knowingly caused to be submitted applications containing false and fabricated information and/or with reckless disregard of their falsity[.]' Instead, Relators must also include sufficient factual allegations 'to raise a right to relief above the speculative level' and 'to raise a reasonable expectation that discovery will reveal evidence of' their claim." *United States ex rel. Lewis v. Walker*, No. 3:06-CV-016, 2008

17

WL 2817091, at *3 (M.D. Ga., July 18, 2008) (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007)).

Relator generally alleges two types of conduct by Nelnet which allegedly violate certain HEA statutes and regulations: "the offering of inducements . . . to secure applicants for FFELP loans" and "engaging in fraudulent or misleading advertising" (TAC, ¶ 2). However, Relator provides only conclusory statements about Chase's knowledge of Nelnet's allegedly illegal practices. Relator merely alleges, with no factual support of any kind, "[Chase] and Citigroup knew, should have known, and continue to know that Nelnet's servicing and marketing activities were in violation of HEA statutes, regulations and DOEd policies" (TAC, ¶ 19). *See United States ex rel. Hines v. Tomlinson*, Civ. No. 08-5157, at 4 (W.D. Ark. Dec. 15, 2009) (dismissing FCA complaint that merely "couched [allegations against defendant] in terms of extensions of the allegations as against [co-defendant]"). Relator's bare allegation of knowledge without any factual support has been explicitly rejected by numerous courts. *See, e.g,. Woods, Walker*, *supra*.

Essentially conceding that he cannot properly allege the requisite mental state under the FCA, Relator claims that, through an audit process, "[Chase] and Citigroup *ostensibly* (1) examined Nelnet's compliance with the HEA statutes and regulations, and (2) examined Nelnet's financial management of its FFELP activities. . . .[Chase] and Citigroup either reviewed these audits before contracting with Nelnet, thus knowing Nelnet serviced and marketed its loans out of HEA compliance, were deliberately ignorant as to whether Nelnet complied with HEA statutes and regulations, or recklessly disregarded Nelnet's regulatory non-compliance" (TAC, ¶ 20) (emphasis added). Such bare conclusory allegations are entitled to no consideration by this Court in determining whether Relator has set forth a "plausible claim for relief." *Iqbal*, 129 S.Ct.

at 1949-50; *Farm Credit Servs. of Am. v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (the court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

The Complaint alleges neither that Chase possessed or reviewed these audit reports nor that the reports revealed any "non-compliance." Similarly, the Complaint fails to allege that Relator has reviewed such audits or possessed any information about them. Absent even these minimal factual allegations, the Complaint contains no factual basis to support a claim that Chase knowingly submitted any false claim. Relator's claims against Chase should be dismissed.

### 3. *The Government's Knowledge of Any Alleged Non-compliance Bars Relator's Claims.*

Even assuming for the sake of argument that the audit reports referenced in the Complaint revealed to Chase any allegedly improper practices by Nelnet, those same practices would necessarily have been revealed to the Secretary of the Department of Education. *See* 34 C.F.R. § 682.416(e)(2) ("The audit must . . . (iv) . . . be conducted at least annually and be submitted to the Secretary within six months of the end of the audit period."). If DOEd knew of such practices, it could not have been deceived and thus no FCA claim could be maintained.[8]

"Since the crux of an FCA violation is intentionally deceiving the government, no violation exists where relevant government officials are informed of the alleged falsity, thus precluding a determination that the government has been deceived." *United States ex rel. Englund v. Los Angeles County*, No. CIV.5-04-282, 2006 WL 3097941, at *8 (E.D. Cal. Oct. 31,

---

[8] Notably, the Complaint does not allege any violation of the Higher Education Act by Chase, nor could it. Violations of the HEA and its implementing regulations are remedied by the Secretary of Education because it is well-established that the HEA does not create any private right of action. *See Labickas v. Ark. State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1485 (9th Cir. 1995); *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1221, 1226 (11th Cir. 2002).

2006). "[I]f the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim." *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 289 (4th Cir. 2002). "A contractor that is open with the government regarding problems and limitations and engages in a cooperative effort with the government to find a solution lacks the intent required by the Act." *United States. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

Accordingly, any disclosure in the audit reports sufficient to place Chase on notice of the alleged wrongdoing would also have been sufficient to eliminate any claim under the FCA because the government would then have had notice of the same practices and could not have been deceived. The Complaint should be dismissed.

**B.      The Conspiracy Claim Against Chase Must Be Dismissed.**

Count III of the Third Amended Complaint, conspiracy to defraud, fails to state a claim against Chase for at least two reasons. First, the Complaint fails to allege that Chase knowingly entered an unlawful agreement to defraud the government. Second, Chase cannot "conspire" with its own agent, as Nelnet is alleged to be in this context.

In Count III, Relator alleges that "[t]hrough [Chase] and Citigroup's servicing and marketing agreements with Nelnet, and [Chase] and Citigroup's line of credit agreement with Nelnet, [Chase], Citigroup, and Nelnet conspired to defraud the U.S. by getting false or fraudulent claims paid by the DOEd and Agencies" (TAC, ¶ 79). According to the Complaint, "The agency and conspiracy allegations set forth herein *are based on . . . Nelnet's student loan servicing and marketing services contracts* with [Chase] and Citigroup . . . and the Credit

Agreement, dated August 19, 2005, to which Nelnet, [Chase] and Citigroup are parties" (TAC, ¶ 14) (emphasis added).

Relator alleges that "Nelnet was and is *the agent* of [Chase] . . . and in performing the acts of loan servicing, marketing and presenting claims, Nelnet was acting within the course and scope of such authority" (TAC, ¶ 11) (emphasis added). Relator also alleges "Nelnet, [Chase], and Citigroup entered into a credit agreement wherein a $500,000,000 loan commitment was made to Nelnet" (TAC, ¶ 21).[9] Pursuant to the Credit Agreement, "[Chase] and Citigroup are liable to the U.S. *as principal to Nelnet* for the false claims Nelnet got allowed or paid *on their behalf* by the U.S." (TAC, ¶ 21) (emphasis added). "Through [Chase] and Citigroup's servicing and marketing agreements with Nelnet, and [Chase] and Citigroup's line of credit agreement with Nelnet, [Chase], Citigroup and Nelnet conspired to defraud the U.S." (TAC, ¶ 79).

### 1. *The Complaint Fails to Allege the Essential Element of an Unlawful Agreement.*

Relator makes conclusory legal allegations in an effort to assert an FCA conspiracy claim. Because the Complaint fails to allege with particularity Chase's knowing participation in an unlawful agreement to defraud, Count III must be dismissed.

---

[9] JPMorgan Chase Bank, N.A. (not Chase) was one of 13 lenders providing funding to Nelnet under the Credit Agreement (TAC, Ex. J (Credit Agreement) at 65 (Commitment Schedule)). Relator asserts that, "[a]ccording to Section 5.08 of the credit agreement, Nelnet is required to use the loan proceeds for 'general corporate purposes' and 'payments required to be made in connection with investigations, actions, suits or proceedings by or before any arbitrator, court or administrative agency" (TAC, ¶ 21). This is a misquote. The Credit Agreement in fact states, "The proceeds of the Loan will be used for general corporate purposes, including without limitation acquisitions and any payments required to be made in connection with the Disclosed Matters," which includes an audit by the DOEd "as described further in [Nelnet's] Form 10Q . . . for the period ended June 30, 2005" (TAC, Ex. J (Credit Agmt.) at § 5.08 and Schedule 3.06). Relator also characterizes the Credit Agreement as a "war chest of credit promised by Chase and Citigroup . . . created, according to section 3.07 . . . to pay for Nelnet's liabilities arising from its noncompliance with laws" (TAC, ¶ 21). Section 3.07 says no such thing. Instead, it is a representation and warranty that Nelnet "is in compliance with all laws, regulations and orders of any Governmental Authority . . . except (i) to the extent, if any, that [Nelnet] may not be in compliance in connection with the Disclosed Matters," in which case "[n]o Default has occurred and is continuing" (TAC, Ex. J at § 3.07).

At the time of the alleged FCA violations, Section 3729(a)(3) made liable any person who "conspire[d] to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 729(a)(3). "[T]o prove a False Claims Act conspiracy, a relator must show (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 193 (5th Cir. 2009) (citation omitted).[10] Under Section 3729(a)(3), a relator must allege the defendant intended to defraud the government and "agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *Allison Engine Co. v. United States ex rel. Sanders* 128 S. Ct. 2123, 2130–31 (2008) *superseded by statute on other grounds*, Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, (D.D.C. Sept. 15, 2001)[11]. *See also United States ex rel. Thomas v. Bailey*, No. 06-CV-465, 2008 WL 4853630, *15 (E.D. Ark. Nov. 6, 2008) (where complaint "does not allege that [alleged coconspirators] had the specific intent to defraud the government . . . complaint fails to state a claim" under Section 3729(a)(3)). "Allegations that amount to nothing more than an agreement to act lawfully, cannot be actionable claims under the FCA for conspiracy." *United States ex rel. Hess*

---

[10] *See also United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 40 (D.D.C. 2008) (citation omitted) ("To state a claim under § 3729(a)(3), the government must show: (1) that defendant conspired with one or more persons to have a fraudulent claim paid by the United States, (2) that one or more of the conspirators performed any act to have such a claim paid by the United States, and (3) that the United States suffered damages as a result of the claim."); *United States ex rel. Hess v. Sanofi-Synthelabo Inc.*, No. 4:05CV570MLM, 2006 WL 1064127, at *11 (E.D. Mo. Apr. 21, 2006) (citation omitted) (same); *United States ex rel. Walner v. NorthShore University Healthsystem*, No. 08C 2642, 2009 WL 3055357, at *2 (N.D. Ill. Sept. 18, 2009) (citations omitted) ("To state a claim under Section 3729(a)(3), [a relator] must allege two elements: 1) that the Defendants had an agreement, combination, or conspiracy to defraud the government by getting a false or fraudulent claim allowed or paid; and 2) that the Defendants did so for the purpose of obtaining or aiding to obtain payment from the government or approval of a claim against the government.").

[11] *See United States v. Sci. Applications Int'l Corp.*, 653 F. Supp. 2d 87 (D.D.C. 2009).

*v. Sanofi-Synthelabo, Inc.*, No. 05-CV-570, 2006 WL 1064127, at *11 (E.D. Mo. Apr. 21, 2006) (citation omitted).

A plaintiff alleging a conspiracy to commit fraud must "plead with particularity the conspiracy as well as the overt acts . . . . taken in furtherance of the conspiracy." *Grubbs*, 565 F.3d at 193. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (dismissing conspiracy claim under Section 1 of the Sherman Act). Where a plaintiff "fail[s] to allege facts which suggest that Defendant[s] acted in concert . . . to make false or fraudulent claims to the Government. . . . Plaintiff's mere conclusory allegation of a conspiracy does not pass muster under Rule 9(b)." *Hess*, 2006 WL 1064127, at *11 (citations omitted). "A mere allegation of a conspiracy without specific facts demonstrating a 'meeting of the minds' among the conspirators fails to state a claim upon which relief can be granted." *Carhart v. Smith*, 178 F. Supp. 2d 1068, 1075 (D. Neb. 2001) (citing *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir.1992)). Where a complaint "allude[s] to a meeting of the minds . . . [but does] not support the assertion with any specific allegations of collusion," a conspiracy claim must be dismissed. *Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc.*, 406 F.3d 1052, 1063-64 (8th Cir. 2005) ("Mere knowledge neither constitutes an act in furtherance of the conspiracy nor supports the inference that [defendants] intended harm to [plaintiff].")

The requirement that the conspiracy be alleged with specificity is demonstrated by *United States ex rel. Graves v. ITT Educational Services, Inc.*, 284 F. Supp. 2d 487, 509 (S.D. Tex. 2003) *aff'd*, 111 Fed. Appx. 296 (5th Cir. 2004), where relators asserted that an auditor was required to investigate and report on HEA compliance by a co-defendant educational institution. The auditor allegedly violated the anti-conspiracy provision of the FCA by excluding from its

reports illegal compensation practices that had been disclosed in the school's Form 10-K filings. In its Form 10-K, which was referred to in the complaint, the educational institution stated that it believed its compensation practices complied with the HEA but that "[t]he regulations do not . . . establish clear guidelines" and it "cannot assure [investors] that the DOE will not find any deficiencies." *Id.* at 504. The court noted the defendants' argument "that Relators allege an unusual conspiracy to conceal facts, by reporting them in a Form 10-K" but held that "the conspiracy claim fails for a more fundamental reason . . . because Relators have not alleged an unlawful agreement between the parties." *Id.* at 509 (citing *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,* No. 94-CV-7316, 2000 WL 1207162, at *12 (E.D. Pa. Aug. 24, 2000) (noting that an "agreement to act lawfully" is "not an actionable claim for an FCA conspiracy."); *see also Hess*, 2006 WL 1064127, at *11 (same). "The essence of a conspiracy under the Act is an agreement between two or more persons to commit a fraud." *Graves*, 284 F. Supp. 2d at 509 (citation omitted).

Similarly, the conspiracy claim against Chase must fail because Relator has alleged nothing more than agreements "to act lawfully." Relator merely alleges that Chase hired Nelnet to service its student loans (TAC, ¶ 11) and that Nelnet obtained a loan from 13 lenders, one of which was JPMorgan Chase Bank, N.A. (TAC, ¶ 21; TAC, Ex. J at 65). *See* TAC, ¶ 14 ("The agency and conspiracy allegations . . . are based on, among other things, Nelnet's student loan servicing and market servicing contracts . . . and the Credit Agreement.") The Complaint is devoid of any factual allegations supporting Relator's conclusory statement that there was a "plan for Nelnet, [Chase] and Citigroup . . . to obtain the maximum amount of U.S. money, with . . . the presentment of false claims" (TAC, ¶ 13).

The Complaint contains no factual allegations whatsoever demonstrating that Chase knew anything about Nelnet's alleged noncompliance with the HEA's inducement and fraudulent advertising prohibitions, much less that Chase *agreed to an unlawful scheme* for Nelnet to falsely certify compliance with such rules to obtain payment from the government. The conspiracy claim should be dismissed.

### 2. *Chase Cannot Conspire With Its Own Alleged Agent.*

Count III against Chase should be dismissed for the additional reason that Chase cannot "conspire" with Nelnet, which allegedly acted as Chase's agent.[12] Because the intracorporate conspiracy doctrine bars a conspiracy claim between a principal and agent, Count III must be dismissed.

General civil conspiracy principles apply to the FCA's conspiracy provision. *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 546 n.3 (7th Cir. 1999) (citing *United States v. Murphy,* 937 F.2d 1032, 1039 (6th Cir. 1991)). "Because a corporation and its agents are a single person in the eyes of the law, a corporation cannot conspire with itself." *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005) (citing *Cross v. General Motors Corp.,* 721 F.2d 1152, 1156 (8th Cir. 1983)); *see also Wiekhorst Bros. Excavating & Equipment Co. v. Ludewig*, 247 Neb. 547, 556 (1995) ("A corporation cannot conspire with an agent when the agent is acting within the scope of his or her authority. Corporations act through their agents, and the acts of an agent are the acts of the corporation."); *Feeley v. Total Realty Mgmt.*, No. 08-CV-1212, 2009 WL 2902505, at *8 (E.D. Va. Aug. 28, 2009) (dismissing conspiracy counts

---

[12] Chase does not concede that Nelnet was in fact acting as an agent of Chase in connection with any marketing activities, including the telemarketing or exit counseling activities underlying Nelnet's alleged FFELP violations. To the contrary, Chase expressly reserves its right to establish, in the event Relator's claims against Chase survive this Motion, that Nelnet's marketing activities were wholly unrelated to the lender-servicer relationship between Chase and Nelnet. Because an ostensible agency relationship between Chase and Nelnet is the basis for the purported conspiracy (*see* TAC, ¶¶ 14, 79), however, the conspiracy claim as alleged must be dismissed for the reasons set forth herein.

under intracorporate immunity doctrine where plaintiffs alleged banks conspired with companies that "were serving as agents of the banks"); *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009) ("[T]here can be no civil conspiracy between . . . a corporation and its agents"); *United States ex rel. Fago v. M & T Mortg. Corp.*, 518 F. Supp. 2d 108, 118 (D.D.C. 2007) (intracorporate conspiracy doctrine barred False Claims Act conspiracy claim against defendant and its employees).

Application of the intracorporate conspiracy doctrine led to dismissal in *United States ex rel. Bartlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113 (W.D. Pa. 2006), where relators filed a civil action pursuant to the FCA alleging that the defendants conspired to defraud the government through false claims and statements in connection with Medicare. The relator was a former employee of a limited liability company defendant ("LLC") that was "contracted to manage the operations of" a co-defendant hospital. The LLC and the hospital were alleged to have conspired to submit false claims. However, the court held that "[the LLC], as an agent, cannot form a conspiracy with its principal, [the hospital]. This is because of the application of the intracorporate conspiracy doctrine which legally prohibits a conspiracy between an agent and its principal." *Id.* at 128 (citing *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-314 (3d Cir. 2003)). The court stated:

> [A]pplying a logical extension of agency principles . . . the Court cannot envision how [the LLC] is acting to conspire with [the hospital]; [the LLC] is acting at the direction of its principal, not separate and apart from it and the fact that [the LLC] is paid under contract for its agency actions is supportive of its agency, not an illegal agreement to benefit from the submission of false claims.

*Id.* Finding that the intracorporate conspiracy doctrine thereby "prevent[ed] any allegation of conspiracy" between the hospital and the company contracted to manage its operations, the conspiracy count was dismissed with prejudice. *Id.*

The allegations in this case are strikingly similar. Nelnet, like the LLC in *Tyrone Hosp.*, allegedly acted as Chase's agent in servicing FFELP loans. *See* TAC, ¶ 13 ("Nelnet was and is the agent of [Chase] . . . and was acting within the course and scope of such agency.") The Complaint states, "The agency and conspiracy allegations . . . are based on . . . Nelnet's student loan servicing . . . contracts with [Chase]" (TAC, ¶ 14). However, the fact that Nelnet was paid under a contract for its services may be "supportive of its agency, [but] not an illegal agreement to benefit from the submission of false claims." *Tyrone Hosp.*, 234 F.R.D. at 128. "[Nelnet], as an agent, cannot form a conspiracy with its principal, [Chase]." *See id.* Like the claim in *Tyrone Hospital*, the Relator's conspiracy claim here should be dismissed.

Because Relator alleges that Nelnet was acting as Chase's agent, and because Relator failed to allege Chase entered an unlawful agreement to defraud the government, Count III must be dismissed.

**C.      Relator Fails to State a Claim on Any Other Theory of Secondary Liability.**

In addition to claiming Chase should be liable under a conspiracy theory, the Complaint suggests three other bases of secondary liability: 1) aiding and abetting; 2) vicarious liability under 34 C.F.R. § 682.413(a)(2) and 3) agency. These claims, however, are insufficient as a matter of law and must be dismissed.

*1.      Relator Failed to Allege Elements of Aiding and Abetting Liability.*

Relator makes a passing reference to aiding and abetting. *See* TAC, ¶ 13 ("[Chase] and Citigroup are individually sued as participants and as aiders and abettors to Nelnet.") Although this theory is never mentioned again, to the extent that the Relator seeks to hold Chase liable for aiding and abetting, he again fails to state a claim.

Even if aiding and abetting were available as a theory of secondary liability under the FCA,[13] Relator fails to allege the essential elements of aiding and abetting under federal common law. The Eighth Circuit requires three elements to state a claim for aiding and abetting: "(1) the existence of violation by the primary party (as opposed to the aiding and abetting party); (2) 'knowledge' of the violation on the part of the aider and abettor; and (3) substantial assistance' by the aider and abettor in the achievement of the primary violation." *Federal Deposit Ins. Corp. v. First Interstate Bank of Des Moines, N.A.*, 885 F.2d 423, 429 (8th Cir. 1989) (citation omitted) (applying aiding and abetting test developed under federal securities laws to claim arising under "federal common law" for aiding and abetting violation of federal statute); *see also K & S P'ship v. Continental Bank, N.A.*, 952 F.2d 971, 977 (8th Cir. 1991).

As described above, Relator has failed to state either an FCA claim against the primary party (i.e., Nelnet), or a conspiracy claim against Chase. "A plaintiff's case against an aider, abettor, or conspirator may not rest on a bare inference that the defendant 'must have had' knowledge of the facts." *K & S P'ship*, 952 F.2d at 977 (internal quotations omitted). "If an illegal scheme exists and a bank's loan assists in that scheme, the bank's knowledge of the scheme is the crucial element that prevents it from suffering automatic liability for the conduct of [those] to whom it loaned the money." *Id.* (citation omitted).

Moreover, Relator failed to allege the third element of aiding and abetting liability: substantial assistance in the achievement of the primary violation. "Establishing this element . . . requires [Relator] to show that [Chase] proximately caused the violation, or, in other

---

[13] Although Congress chose to include a conspiracy claim under the FCA, the FCA makes no mention of "aiding and abetting." "Congress … has taken a statute-by-statute approach to civil aiding and abetting liability …. The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182, 184 (1994), *superseded in part by* 15 U.S.C. § 78t (finding no aiding and abetting liability under Securities Exchange Act of 1934 where statute was silent on the issue.)

words, that the encouragement or assistance was a substantial factor in causing the [violation]." *Id*. at 979. Relator alleges no facts suggesting that Chase, as one of many lenders contracting with Nelnet to service its loans or as one of many lenders that provided credit for general corporate purposes (TAC, ¶ 21), proximately caused Nelnet to defraud the government or provided any "substantial assistance" in submitting any false claim.

Because the Complaint fails to allege a primary violation of the FCA, fails to allege Chase had knowledge of any illegal scheme, and still further fails to allege "substantial assistance," the aiding and abetting allegations must be dismissed.

### 2. Section 682.413(a)(2) Does Not Make Chase Jointly and Severally Liable for Nelnet's Alleged False Claims.

Relator makes yet another suggestion that Chase may be secondarily liable under a DOEd regulation, 34 C.F.R. § 682.413(a)(2). Because the referenced regulation fails to support a claim for liability against Chase, this allegation must be dismissed as well.

Relator incorrectly concludes that 34 C.F.R. § 682.413(a)(2) could make Chase jointly and severally liable for Nelnet's purported false claims, asserting that "[f]or all of Nelnet's claims . . . JP Morgan, Citigroup, and Nelnet are jointly and severally liable for the repayment of . . . interest payments, special allowance payments, and default claim payments . . . and violations of the False Claims Act" pursuant to 34 C.F.R. § 682.413(a)(2). (TAC, ¶ 19). *See also* (TAC, ¶¶ 71, 76). ("Defendants JP Morgan and Citigroup . . . are . . . jointly and severally liable, along with Nelnet, *for Nelnet's false claims* pursuant to 34 C.F.R. § 682.413(a)(2).")

Section 682.413(a)(2) states, "*For purposes of this section*, a lender and any applicable third-party servicer shall be considered jointly and severally liable *for the repayment* of any interest benefits and special allowance paid as a result of a violation of applicable requirements by the servicer in administering the lender's FFELP programs." *Id.* (emphasis added). Although

Section 682.413 may impose joint and several liability obligations for repayment of interest and special allowances *to the DOEd,*[14] the regulation does not purport to create joint and several liability for violations of the False Claims Act. (*Contra* TAC, ¶¶ 71, 76).

Relator's error is even more fundamental, though. A violation of FFELP rules vitiates the eligibility of a loan for program benefits only if the violation has a nexus to that loan. 34 C.F.R. 682.406, 682.413. *See e.g.* 34 CFR 682.406(a)(12) (a condition of FFELP reinsurance is that a loan complies "with all other Federal requirements with respect to *the loan*") (emphasis added); *id.* § 682.413(a)(1) (DOEd requires lender to repay compensation received on a loan if lender fails to comply with § 682.406(a)(12)). Thus, in order for a lender to lose its entitlement to program benefits on a loan, or to become obligated to repay benefits previously received on a loan due to a violation of FFELP rules, the violation must have a nexus with that particular loan.[15] Relator has not alleged that any of Nelnet's alleged improper inducements or fraudulent advertising activities occurred with respect to or otherwise tainted the loans it allegedly serviced for Chase.

Accordingly, Relator has failed to allege facts sufficient to establish that the claims filed by Nelnet on the loans it serviced for Chase were false in the first instance, and has failed to plead facts demonstrating that Chase is now liable to DOEd for repayment of any amounts previously paid on those loans. Contrary to Relator's assertions, Section 682.413(a)(2) could not render Chase jointly and severally liable under the FCA for Nelnet's purported false claims. Relator's claim for vicarious liability should be dismissed.

---

[14] "The corrective action may include payment *to the secretary* or recipients designated by the secretary." 34 C.F.R. § 709(b) (emphasis added).

[15] Additionally, under Section 682.413(e)(1)(i), "[t]he Secretary's decision to require repayment of funds . . . does not become final until the Secretary provides the lender, agency, or servicer with written notice of the intended action and an opportunity to be heard." In this case, Relator has not claimed the Secretary made such decision and, of course, provided no such written notice or opportunity for hearing to Chase.

### 3. *Chase Is Not Liable as Nelnet's Principal for Nelnet's Alleged FCA Violations.*

Relator also seeks to hold Chase liable for Nelnet's alleged FCA violations under an agency theory. (TAC, ¶¶ 71, 76.) For failing to properly plead agency liability, however, these claims must fail as well.

Relator alleges that "Nelnet provided and/or currently provides, through a contractual agreement, student loan services to [Chase] . . . and acts as [Chase's] claims agent, getting false claims for federal subsidies allowed on [Chase's] behalf" (TAC, ¶ 11). Although Relator acknowledges that he "does not have a copy of these agreements" (TAC, ¶ 19), Relator renders a summary legal conclusion that "Nelnet was and is the agent of [Chase] . . . and in performing the acts of loan servicing, marketing and presenting claims, Nelnet was acting within the course and scope of such authority" (TAC, ¶ 13).

In *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994), the court explained the difference between two types of agency relationships: servants and independent contractors. "Servants generally are employees of the principal, and are subject to physical control by the principal." *Id.* at 1435 (citations omitted). An independent contractor, on the other hand, "is 'characterized by the attributes of self-employment and self-determination in the economic and professional sense.'" *Id.* (citation omitted).

According to the Complaint, "Nelnet is one of the leading providers of student loans and loan servicing for companies holding FFELP loans" and "a publicly traded company on the New York Stock Exchange" (TAC, ¶ 10). "Nelnet would perform servicing duties for various lenders," not just Chase. (TAC, ¶ 19). Because the Complaint alleges Nelnet is an independent business with numerous lenders as clients and Chase is not alleged to exercise control over the manner in which Nelnet services loans, the sufficiency of the Complaint's agency allegations

31

should be examined according to the standard for "agent independent contractors.

In *United States ex rel. Magid v. Wilderman*, No. 96-CV-4346, 2004 WL 945153, at *10 (E.D. Pa. Apr. 29, 2004), the court explained five requirements must be met before a principal could be held liable for the FCA violations of its agent independent contractor:

> (1) the principal must authorize the agent independent contractor to conduct and conclude a transaction with a third party on the principal's behalf; (2) the principal must benefit financially from that conduct; (3) the agent independent contractor's act must be foreseeable; (4) it must be reasonable for the third party to rely on those acts; and (5) the third party must have no notice that the third party's representations are unauthorized.

*Magid*, 2004 WL 945153, at *10 (citing *AT&T*, 42 F.3d at 1438).

The Complaint fails to allege these five requirements for alleging agency liability. Relator concludes that Nelnet was authorized to "perform[] the acts of loan servicing, marketing and presenting claims [and] was acting within the course and scope of such agency" (TAC, ¶ 13), but the Complaint bases this alleged authority on mere speculation rather than plausible factual allegations (*see* TAC, ¶ 19) (admitting Relator does not have copy of any Chase-Nelnet agreement). Similarly, the Complaint does not allege factually how Nelnet's alleged HEA violations and the false claims purportedly arising therefrom benefited Chase financially. As described above, the Complaint fails to properly plead that Chase had knowledge of Nelnet's alleged false claims or underlying HEA violations, and identifies no facts suggesting that Chase could or should have foreseen that Nelnet would violate any rules regarding compensation of Nelnet's own employees or exit counseling to educational institutions.

Because the Complaint fails to plead facts sufficient to allege Chase should be held liable for the actions of Nelnet on an agency theory, the Complaint should be dismissed. *See Iqbal*, 129 S. Ct. at 1949 ("[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss.") (emphasis added).

**D.      Defendant Chase Is Not a Proper Party to This Action**

The Complaint also should be dismissed for failing to properly allege alter ego liability against Chase.  As Relator explicitly recognizes in the Complaint, the entity that issued FFELP student loans, which were serviced by Nelnet, is not Chase, but JPMorgan Chase Bank, N.A. ("JPMC Bank").  (TAC, ¶ 11; *see also* TAC, Ex. D (FFELP Federal Plus Loan App. & Master Promissory Note) at Item 9 ("Lender Name: JPMorgan Chase Bank, N.A.")).  Furthermore, Relator concedes that JPMC Bank, not Chase, is the entity that entered into the Credit Agreement (TAC, Ex. J).  Nevertheless, the Complaint names as a defendant the lender's parent company, Chase, rather than the lender, JPMC Bank.  *Id.*  Relator apparently named Chase as a defendant based on the conclusory allegation that Chase and JPMC Bank "are alter-egos of one another, subject to *inter alia*, common control and leadership."  *Id.*  The Complaint identifies no facts in support of this allegation.  In other words, Relator apparently seeks—without any supporting factual allegations—to pierce the corporate veil and hold Chase liable for alleged wrongdoing by JPMC Bank.

Although there is disagreement regarding whether federal courts should apply state or federal common law standards for piercing the corporate veil for liability on violations of federal law, *N.L.R.B. v. Bolivar-Tees, Inc.*,  551 F.3d 722, 728 n.3 (8th Cir. 2008) (citing *United States v. Bestfoods*, 524 U.S. 51, 63 n.9 (1998)), Relator's allegations fail under any test.  The Eighth Circuit's federal common law test asks: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations."

*Bolivar-Tees*, 551 F.3d at 728 (citation omitted). A "non-exhaustive list of factors" considered in connection with the first prong includes:

> (1) whether the corporation is operated as a separate entity; (2) the commingling of funds and other assets; (3) the failure to maintain adequate corporate records; (4) the nature of the corporation's ownership and control; (5) the availability and use of corporate assets, the absence of same, or under capitalization; (6) the use of the corporate form as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of corporate legal formalities and the failure to maintain an arm's-length relationship among related entities; (8) diversion of the corporate funds or assets to noncorporate purposes; and . . . (9) transfer or disposal of corporate assets without fair consideration.

*Id.* (citation omitted). In connection with the second prong, courts "consider causation and culpability." *Id.* at 729 (citation omitted). "A corporation's inability to pay its debt alone is not sufficient," and "[i]t is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced." *Id.* (internal quotation omitted) (emphasis added).

Nebraska law looks to the law of the state of incorporation to determine whether to pierce the corporate veil. *Johnson v. Johnson*, 272 Neb. 263, 275 (2006). "Defendant [Chase] is a Delaware corporation" (TAC, ¶ 11), and "[p]ersuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (citation omitted). "[T]he act of one corporation is not regarded as the act of another merely because the first corporation is a subsidiary of the other." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001). "Rather, to pierce the corporate veil based on an agency or 'alter ego' theory, 'the corporation must be a sham and exist for no other purpose than as a vehicle for fraud.'" *Id.* (citing *Wallace*, 752 A.2d at 1184). "The degree of control required to pierce the veil is exclusive domination and control to the point that [the subsidiary] no longer has

legal or independent significance of its own." *Wallace*, 752 A.2d at 1184 (internal citation and modifications omitted).

In support of his veil-piercing theory, Relator makes only the conclusory allegations that "JPMorgan Chase Bank, N.A., [is] a 100% owned subsidiary of [Chase]" and that "[Chase] and JPMorgan Chase Bank, N.A., are alter-egos of one another, subject to, *inter alia*, common control and leadership" (TAC, ¶ 11). Relator makes no allegations that the separate identities of Chase and JPMC Bank were not respected, nor that JPMC Bank was a sham or mere vehicle for fraud, nor any other allegation sufficient to impose alter ego liability. As explained in *Sunstates*, courts will not pierce the corporate veil "merely because the first corporation is a subsidiary of the other." 788 A.2d at 534. Under either federal common law or state law standards, Relator's allegations are woefully insufficient to state a claim for alter ego liability. All claims against Chase should be dismissed.

## VI.  CONCLUSION

For all these reasons, Relator has failed to state a claim upon which relief may be granted. Chase respectfully requests that the Court dismiss the Complaint with prejudice.

Dated this 7th day of January, 2010.

JPMORGAN CHASE & CO., Defendant

By: *s/* Edward G. Warin

Edward G. Warin, #14396
Thomas J. Kenny #20022
Paul R. Gwilt #22660
Angela K. Wilson #24238
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186
(402) 346-6000
edward.warin@kutakrock.com
thomas.kenny@kutakrock.com
paul.gwilt@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

J. Bradley Pigott
Pigott, Reeves Law Firm
Post Office Box 22725
Jackson, MS  39225-2725
Phone: (601) 354-2121
Fax: (601) 354-7854
Email: bpigott@prjlawyers.com

Timothy J. Matusheski
Matusheski Law Firm
Post Office Box 1421
Waynesboro, MS  39367
Phone: (601) 735-5222
Fax: (601) 735-5008
Email: tim@mississippiwhistleblower.com

Laurie A. Kelly
U.S. Attorney's Office
Suite 1400
1620 Dodge St.
Omaha, NE  68102-1506
Phone: (402) 661-3700
Fax: (402) 661-3081
Email: laurie.kelly@usdoj.gov

Rosalee B. Connell
Tracy D. Rezvani
Finkelstein, Thompson Law Firm
1050 30th Street NW
The Duvall Foundry Building
Washington, DC  20007
Phone: (212) 337-8000
Fax: (212) 337-8090
Email: rconnell@finkelsteinthompson.com
        trezvani@finkelsteinthompson.com

Rosemary M. Rivas
Finkelstein, Thompson Law Firm
100 Bush Street
Suite 1450
San Francisco, CA 94104
Phone: (415) 398-8700
Fax: (415) 398-8704
Email: rrivas@finkelsteinthompson.com

Scott H. Peters
Peters Law Firm
Post Office Box 1078
Council Bluffs, IA 51502-1078
Phone: (712) 328-3157
Fax: (712) 328-9092
Email: scott.peters@peterslawfirm.com

Daniel F. Kaplan
Derek A. Aldridge
PERRY, GUTHERY LAW FIRM
233 South 13th Street
Suite 1400
Lincoln, NE 68508
(402) 476-9200
Fax: (402) 476-0094
Email: dkaplan@perrylawfirm.com
Email: daldridge@perrylawfirm.com

James P. Fitzgerald
Nicholas R. Grennan
MCGRATH, NORTH LAW FIRM
1601 Dodge Street
Suite 3700, First National Tower
Omaha, NE 68102-1627
(402) 341-3070
Fax: (402) 341-0216
Email: jfitzgerald@mcgrathnorth.com
Email: ngrennan@mcgrathnorth.com

Christina Chen
James R. McGuire
MORRISON, FOERSTER LAW FIRM -
SAN FRANCISCO
425 Market Street
32nd Floor
San Francisco, CA 94105
(415) 268-7000
Fax: (415) 268-7522
Email: ChristinaChen@mofo.com
Email: jmcguire@mofo.com

Dan Marmalefsky
MORRISON, FOERSTER LAW FIRM - LOS
ANGELES
555 West Fifth Street
Los Angeles, CA 90013
(213) 892-5200
Fax: (213) 892-5454
Email: dmarmalefsky@mofo.com

and I hereby certify that I have fax and/or mailed by United States Postal Service the document
to the following:

Jay D. Majors
U.S. Department of Justice
Post Office Box 261
Ben Franklin Station
Washington, DC 20044
Phone: (202) 307-0264
Fax: (202) 514-0280

By: s/ Edward G. Warin_____
Edward G. Warin